# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-023

Filing Date: April 26, 2021

No. S-1-SC-37893

STATE OF NEW MEXICO,

Plaintiff-Respondent,

v.

SANDI TAYLOR and MARY TAYLOR,

Defendants-Petitioners.

ORIGINAL PROCEEDING ON CERTIORARI
Donna Mowrer, District Judge

Released for Publication August 3, 2021.

Harmon, Barnett & Morris, P.C.
Tye C. Harmon
Clovis, NM

Herrmann and Sumrall, P.C.
Benjamin E. Herrmann
Clovis, NM

for Petitioners

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Respondent

## OPINION

BACON, Justice.

{1}     Defendants Sandi Taylor and Mary Taylor were each convicted of two counts of child abuse after they failed to remove two children from a hot vehicle. Sandi was sentenced to thirty years of imprisonment, and Mary was sentenced to thirty-six years of imprisonment. They have appealed their convictions and seek release under NMSA

1978, Section 31-11-1(C) (1988), while their appeal is pending. The district court denied their motion for release pending appeal, and the Court of Appeals, without analysis, affirmed the district court's decision. This Court issued an order remanding the matter of release pending appeal to the district court and instructing the district court to release Defendants on conditions no greater than those entered pretrial. We issue this opinion to explain our ruling in this matter.

**{2}** We adopt the analysis provided by the Court of Appeals in *State v. House*, 1996-NMCA-052, 121 N.M. 784, 918 P.2d 370, for determining whether a defendant's appeal raises a substantial question under Section 31-11-1(C)(2). However, we expressly reject any suggestion from *House* that release pending appeal under Section 31-11-1(C) is not mandatory where defendants meet all of the requirements described by Section 31-11-1(C). *See* 1996-NMCA-052, ¶¶ 8, 15. Defendants who meet all of the requirements of Section 31-11-1(C) are entitled to release pending appeal.

**{3}** We conclude that Defendants meet Section 31-11-1(C)'s requirements and are entitled to release pending the resolution of their appeal on the merits. We hold that the Court of Appeals erred, and we reverse the Court of Appeals' decision.

## I.  BACKGROUND

**{4}** Defendants operated a daycare. In July 2017, Defendants drove the daycare children, twelve in total, in two cars, to a park for lunch. Defendants did not have permission from the Children, Youth, and Families Department (CYFD) to drive the daycare children.

**{5}** When they returned to the daycare center, Sandi tended to one of the children from her vehicle who needed a change of underwear. Some of the children in her vehicle exited on their own and went into the daycare center. Mary drove a separate vehicle, and she and all the children from her vehicle went into the daycare center. Two children, however, remained in Sandi's vehicle. Testimony at trial revealed that each Defendant believed the other had brought the two children into the daycare center. Defendants did not conduct a headcount of the children at any point, and they did not maintain proper caregiver-to-child ratios.

**{6}** Approximately two hours and forty minutes later, Sandi went to her vehicle and discovered the two children inside. When she found them, she and Mary removed the children from the vehicle, called 911, and attempted to revive the children. The outdoor temperature was ninety-one degrees. One child died, and the other child, whose body temperature was 108.3 degrees when the paramedics arrived, suffered serious neurological injuries. Defendants were charged with child abuse resulting in great bodily harm by reckless disregard, contrary to NMSA 1978, Section 30-6-1(D), (E) (2009), and child abuse resulting in death by reckless disregard, contrary to Section 30-6-1(D), (F). Following a jury trial, both Defendants were convicted of child abuse for the death of one child and great bodily harm to the other child.

**{7}** Following conviction, Defendants petitioned the district court pursuant to Rule 12-205(B) NMRA and Section 31-11-1(C), for release pending appeal. The district court denied Defendants' motion, finding that Defendants failed to "raise[] a substantial question of law or fact likely to result in reversal or an order for a new trial," as required under Section 31-11-1(C)(2). Consistent with Rule 12-205(B), Defendants appealed that decision to the Court of Appeals through a motion to review conditions of release. *See* Rule 12-205(B). The Court of Appeals concluded, without analysis, that Defendants failed to satisfy the requirements of Rule 12-205 and Section 31-11-1(C) and denied Defendants' motion to review conditions of release. Subsequently, Defendants petitioned this Court for certiorari, pursuant to Rule 12-205(C).

## II.    DISCUSSION

### A.    Requirements for Release Pending Appeal Under Section 31-11-1(C)

**{8}** We determine whether Defendants are entitled to release pending appeal under Section 31-11-1(C), which states,

> If a defendant is convicted of a noncapital offense other than a violent offense and is sentenced to a term of imprisonment not suspended in whole, he shall not be entitled to release pending appeal unless the court finds:
>
> (1)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and
>
> (2)    that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.

**{9}** Defendants were convicted of noncapital, nonviolent offenses. *See* § 31-11-1(D) (enumerating the offenses that are considered "violent" for purposes of applying Subsection C). Both parties agree that Defendants, by clear and convincing evidence, are not considered flight risks and do not pose a danger to the community. Additionally, the district court found, and the State does not contest, that Defendants do not bring an appeal for purpose of delay. Thus, we review only whether their appeal raises a "substantial question of law or fact" that if resolved in favor of Defendants would "likely . . . result in reversal or an order for a new trial." *See* § 31-11-1(C)(2).

### 1.    Standard of review

**{10}** Whether an appeal raises a "substantial question of law or fact likely to result in reversal or an order for a new trial" under Section 31-11-1(C)(2) is a question of law. *See Sanchez*, 2020-NMSC-017, ¶ 12. This Court reviews questions of law de novo. *Id.*

**2. To be entitled to release, Section 31-11-1(C)(2) requires an appeal that raises a substantial question**

**{11}** In New Mexico, there is no constitutional right to release pending appeal. *See* N.M. Const. art. II, § 13; *House*, 1996-NMCA-052, ¶ 6. However, release pending appeal is not out of reach to every convicted defendant. *House*, 1996-NMCA-052, ¶ 6. Instead, "a limited and conditional right" to release pending appeal is available to those defendants who satisfy the requirements of Section 31-11-1(C), thereby ensuring that society is protected and the appeal preserves the "effective and efficient administration of justice." *House*, 1996-NMCA-052, ¶¶ 6, 9; *State v. Rivera*, 2004-NMSC-001, ¶ 26, 134 N.M. 768, 82 P.3d 939 ("[D]efendants are given a qualified opportunity for release pending appeal.").

**{12}** In New Mexico, Section 31-11-1(C) governs this limited right and has previously been interpreted by our Court of Appeals in *House*, 1996-NMCA-052. The *House* Court adopted the analytical framework described by *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985), and originally put forward by *United States v. Miller*, 753 F.2d 19, 23-24 (3d Cir. 1985), to guide courts considering whether a defendant shall be released pending appeal. *See* 1996-NMCA-052, ¶¶ 14-15. This framework requires a defendant to prove and the court to find

    (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;

    (2) that the appeal is not for purpose of delay;

    (3) that the appeal raises a substantial question of law or fact; and

    (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*Miller*, 753 F.2d at 24.

**{13}** The *House* Court also adopted *Affleck*'s interpretation of "substantial question." 1996-NMCA-052, ¶ 14. Under *Affleck*'s interpretation, "[a] substantial question is a close question or one that very well could be decided the other way." *Id.* (quoting *Affleck*, 765 F.2d at 952 (internal quotation marks omitted)). A substantial question "is one of more substance than would be necessary to a finding that it was not frivolous." *Affleck*, 765 F.2d at 952 (internal quotation marks and citation omitted). A substantial question "is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Id.* (internal quotation marks and citation omitted) (quoting *Miller*, 753 F.2d at 23).[1] "[A] question 'which has not been decided by controlling precedent' may not be

---

[1] *Affleck* also recognized that *United States v.* Handy defines a "substantial question" as "fairly debatable," considering it synonymous with "fairly doubtful." 765 F.2d at 952 n.12 (citing 761 F.2d 1279, 1281 (9th Cir. 1985).

'substantial' under [the statute]." *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir. 1985)). There are no "blanket categories for . . . [a] substantial question"; whether the appeal raises a substantial question is an inquiry that a court must undertake on a case-by-case basis. *Id.* (internal quotation marks omitted) (citing *Giancola*, 754 F.2d at 901).

**{14}** Thus, a "substantial question" in New Mexico for the purposes of Section 31-11-1(C) is a question "of more substance than would be necessary to a finding that it was not frivolous," "a close question or one that very well could be decided the other way," or a question that is "either novel, . . . has not been decided by controlling precedent, or . . . fairly doubtful." *House*, 1996-NMCA-052, ¶¶ 12, 14 (internal quotation marks and citations omitted). "[A] question which has not been decided by controlling precedent may not be substantial." *Affleck*, 765 F.2d at 952 (internal quotation marks and citation omitted).

**{15}** Whether a substantial question is likely to result in a reversal or an order for a new trial relates to "the significance of the substantial issue to the ultimate disposition of the appeal." *Miller*, 753 F.2d at 23. In its consideration, a court assumes that the substantial question would be decided in a defendant's favor on appeal. *Affleck*, 765 F.2d at 953. Then the court determines whether the issue is so integral to the merits of the conviction that resolution in a defendant's favor would "result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Id.* (quoting *Miller*, 753 F.2d at 24). When considering whether to grant release pending appeal, courts are not in a position to play "bookmakers" that might tip the scales in a defendant's actual appeal on the merits. *Id.* at 953 n.14. Rather, this analysis is a preliminary assessment of the merits on appeal. *See House*, 1996-NMCA-052, ¶ 9.

**{16}** Section 31-11-1(C) imposes requirements that protect New Mexico communities and the administration of justice while also providing some defendants a path for release pending appeal. As we have described, defendants have the burden of proof to show that (1) they are not a flight risk, (2) they are not a danger to the community, (3) the appeal is not for the purpose of delay, and (4) the appeal raises a substantial question of law or fact likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed. When defendants satisfy the conditions of the Section 31-11-1(C), the plain language of the statute entitles them to release subject to the conditions of release imposed by the trial court. In *House*, the Court of Appeals at times appears to suggest that release pending appeal is not mandatory, even when a defendant satisfies the statutory conditions. *See e.g.*, 1996-NMCA-052, ¶ 8 (stating that Section 31-11-1(C) limits "those situations in which a trial court may even consider setting bail pending appeal"), ¶ 15 (stating that "bail pending appeal is appropriate if" a defendant raises a substantial question); *but see* 1996-NMCA-052, ¶ 23 ("[A defendant] is not entitled to release under Section 31-11-1(C) unless his appeal also presents a substantial question.").

**{17}** Any suggestion that release pending appeal may not be mandatory where a defendant has met the statutory conditions is contrary to the plain language of Section 31-11-1(C) and its statutory predecessors. Since before statehood, New Mexico has

entitled some post-conviction defendants to release pending appeal. NMSA 1978, § 31-11-1(B) (1981) ("[T]he defendant [who is not sentenced to death or life imprisonment] is entitled to be released on bail pending the decision upon review by filing a bond in the sum, and with conditions, fixed by the district court."); NMSA 1953, § 41-15-2(B) (1966) (Vol. 6, 2d Repl. 1972) ("In all criminal cases [not implicating a sentence of death or life imprisonment], the defendant is entitled to be released on bail pending the decision upon review by filing a bond in the sum, and with conditions, fixed by the district court."); NMSA 1929, § 105-2532 (1927) ("[I]n all other cases [not implicating a sentence of death or life imprisonment] the party taking the appeal or suing out the writ of error shall be entitled to be released on bail by filing a bond in the sum and with conditions to be fixed by the district court . . . ."); NMSA 1915, § 4527 (1907) ("[I]n all other cases of appeal [not implicating a sentence of death or life imprisonment] the party taking the appeal shall be entitled to give bail by filing a bond in a sum and with conditions to be fixed by the district court . . . ."). By amending Section 31-11-1(C) in 1988, the Legislature simply limited and conditioned this right on the defendants' successful showing that they meet new and additional statutory requirements, whereas before 1988, defendants had a lesser burden to secure release pending appeal. *See House*, 1996-NMCA-052, ¶ 6 (recognizing the "limited and conditional *right*" to release pending appeal granted by Section 31-11-1(C) (emphasis added)).

## B.    Defendants Raise Substantial Questions Integral to the Merits of Their Appeal, Making Them Eligible for Release Pending Their Appeal

{18}    Defendants raise two primary issues in their appeal, and they argue that both are substantial questions that are likely to result in either a reversal or an order for a new trial. They challenge the sufficiency of the evidence against them, and they claim that instructional error prevented the jury from arriving at a unanimous decision as to the conduct alleged to be child abuse.

{19}    In our preliminary assessment we consider whether either issue raises a question "of more substance than would be necessary to a finding that it was not frivolous," "a close question or one that very well could be decided the other way," or a question that is "either novel, . . . has not been decided by controlling precedent, or . . . fairly doubtful." *House*, 1996-NMCA-052, ¶¶ 12, 14 (internal quotation marks and citations omitted). We conclude that both issues raised by Defendants constitute substantial questions under Section 31-11-1(C)(2). If either of these substantial questions is resolved in Defendants' favor on appeal, then that determination would "result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Affleck*, 765 F.2d at 953 (quoting *Miller*, 753 F.2d at 24 (internal quotation marks omitted)). Thus, Defendants meet the requirements of Section 31-11-1(C) and are entitled to release pending their appeal.

## 1.    Sufficiency of the evidence

{20}    Defendants contend that there is not sufficient evidence to support the jury's finding that they committed child abuse by reckless disregard. Specifically, they assert

that there is not sufficient evidence to show that they acted with the requisite mens rea to support their convictions.

**{21}** Under Section 30-6-1(D), child abuse "consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be: (1) placed in a situation that may endanger the child's life or health; (2) tortured, cruelly confined or cruelly punished; or (3) exposed to the inclemency of the weather." The statute states that "'negligently' refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." Section 30-6-1(A)(3). However, in *State v. Consaul*, we clarified that although the child abuse statute states "negligence," the required mens rea under Section 30-6-1(D) is recklessness. 2014-NMSC-030, ¶¶ 36-37, 332 P.3d 850. We reasoned in *Consaul* that "the term 'reckless disregard' . . . prevail[s] when 'knew or should have known' conflicts." *Id.* ¶ 40. "[R]ecklessness require[s a defendant] to *consciously* disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the [defendant]'s situation." *Id.* ¶ 37 (emphasis added) (citing Model Penal Code § 2.02(2)(c) (definition of *recklessly*)). Thus, to support a defendant's conviction of reckless child abuse, there must be sufficient evidence for the reviewing court to conclude that the defendant committed the actus reus with the required mens rea. *See State v. Granillo*, 2016-NMCA-094, ¶ 13, 384 P.3d 1121. "[A]ccidental conduct cannot support a conviction for [reckless] child abuse." *State v. Arrendondo*, 2012-NMSC-013, ¶ 26, 278 P.3d 517.

**{22}** In this case, a substantial question exists as to whether there is substantial evidence establishing beyond a reasonable doubt that Defendants recklessly disregarded the risk that the children would suffer great bodily harm or death when they failed to remove the children from the vehicle. *See State v. Romero*, 2019-NMSC-007, ¶ 51, 435 P.3d 1231. Defendants argue that because they were not aware that the children were left in the vehicle, they could not have *consciously* disregarded the risk of leaving the children in the car when they failed to remove them. Thus, they contend that the State failed to prove that Defendants had the requisite state of mind—reckless disregard—when they failed to remove the children from the vehicle. The State argues that Defendants recklessly disregarded the risk of leaving the children in the vehicle because Defendants knew the children were originally in the car, failed to remove the children from the vehicle, and failed to notice that the children were missing.

**{23}** Defendants' argument meets the threshold for a "substantial question." *See House*, 1996-NMCA-052, ¶¶ 13-14 (citing *Affleck*, 765 F.2d at 952). Defendants present a question "of more substance than would be necessary to a finding that it was not frivolous." *Id.* ¶ 14 (quoting *Affleck*, 765 F.2d at 952). That Section 30-6-1(D) requires a mens rea of reckless disregard is neither novel nor undecided by controlling precedent. We clearly stated in *Consaul* that the required state of mind under Section 30-6-1(D) is recklessness, not negligence. 2014-NMSC-030, ¶ 37. However, we reason that it is fairly doubtful that sufficient evidence proves Defendants had the requisite mens rea of reckless disregard when they committed the actus reus. While the jury found that

Defendants showed a reckless disregard for the children's health or safety, we conclude that this question is a close question that could very well be decided the other way.

**{24}**　On the one hand, Defendants originally placed the children in the vehicle and failed to notice that they were missing for over two hours. This failure is consistent with other evidence that Defendants did not always take appropriate precautions to ensure the safety and well-being of the children at the daycare. Defendants did not follow the rules and procedures mandated by the CYFD. Among other violations, they failed to do head counts, they drove children in their care without permission, and they lacked the proper caregiver-to-child ratios. Thus, their failure to remove the children from the car was consistent with other conduct that is inappropriate for a business responsible for the health and safety of children. Together, these actions resulted in undeniable tragedy that the jury found indicated a reckless disregard.

**{25}**　On the other hand, Defendants did not leave the children in the vehicle with the intent to leave them in the vehicle. Each Defendant thought the other had removed the two children from the vehicle. Police officers testified that there was no evidence Defendants were aware the children had been left in the vehicle. Accordingly, while Defendants did leave the children in the car, they would not have been aware of the risk created by their failure to remove the children, and thus they could not have consciously disregarded the risk.

**{26}**　We conclude that a substantial question exists as to whether sufficient evidence was presented at trial to support Defendants' convictions. This question is "'integral to the merits'" of Defendants' appeal. *Affleck*, 765 F.2d at 953 (quoting *Miller*, 753 F.2d at 23). Resolution of the question in Defendants' favor would result in a reversal of all of Defendants' convictions for which imprisonment has been imposed. *See id.* Thus, Defendants have satisfied the requirements for Section 31-11-1(C) under their sufficiency of the evidence argument.

## 2.　Jury instructions

**{27}**　Defendants objected to the reckless child abuse jury instructions at trial and argue now that those jury instructions provided by the district court did not allow the jury to arrive at a unanimous decision regarding the conduct alleged to be child abuse.

**{28}**　Where the state advances "two or more different or inconsistent acts or courses of conduct . . . as [differing] theories as to how a child's injuries occurred . . . the jury must make an informed and unanimous decision, guided by separate instructions, as to the culpable act the defendant committed and for which he is being punished." *Consaul*, 2014-NMSC-030, ¶ 23. "Jurors should not be left free, let alone encouraged by the prosecutor, each to go his or her own way when it comes to determining what criminal conduct—if more than one act is alleged—caused the child's harm." *Id.* ¶ 25.

**{29}**　The jury instructions as to reckless child abuse in this case included an "and/or" phrase. Numbered paragraph one of the uniform jury instructions required a description of the "conduct or course of conduct alleged to have been child abuse." *See* UJI 14-615

NMRA, UJI 14-622 NMRA. Numbered paragraph one of the instructions the jury received states,

> [Defendant] did not follow the proper rules and procedures mandated by CYFD in conducting the care of [Child], including failing to do headcounts, driving [Child] without CYFD permission, failing to have proper care giver to child ratio when [Child] was in her care, and/or failing to remove [Child] from a vehicle which resulted in [Child] being left unattended in that vehicle and exposed to unsafe temperatures for a time period of approximately two hours and 40 minutes.

This description of the alleged conduct was identical in the jury instructions for both Defendants and was given to the jury four times, once as to each child for each Defendant.

**{30}**   Defendants argue that the jury instructions tendered in this case were improper. Specifically, Defendants contend that because the instructions listed acts alleged to be child abuse using an "and/or" phrase at the end, it is impossible to know which particular acts the jury agreed amounted to child abuse. Defendants argue that this instruction tenders four separate legal theories—one for each act. Additionally, they argue that each act does not independently rise to reckless child abuse.

**{31}**   The State argues that the instruction was acceptable because all of the acts support a single theory of recklessness. The State contends that *Consaul* involved "'different and inconsistent theories as to what [the defendant] actually did,'" quoting *Consaul*, 2014-NMSC-030, ¶¶ 24-26, and distinguishing those theories as either (1) reckless child abuse, where the defendant swaddled the baby too tightly and laid him face down in bed out of frustration, or (2) intentional child abuse, where the defendant used either a pillow or his hand to suffocate the baby. The State contends that here only one theory of child abuse, by reckless disregard, was presented and that the acts here were not inconsistent because the various acts within the jury instruction were all acts of recklessness. The State asserts that there is no uncertainty as to whether the jury unanimously agreed on which act caused harm to the children, because it is undisputed that the act of leaving the children in a hot car caused the great bodily harm of one child and death of the other child.

**{32}**   In our preliminary assessment of the parties' arguments, we conclude that a substantial question exists regarding whether the jury instruction properly reflected the legal theories presented to allow the jury to "make an informed and unanimous decision . . . as to the culpable act [Defendants] committed and for which [they are] being punished." *Id.* ¶ 23. It is unclear whether the jury instructions intended to address multiple legal theories or just a single theory of recklessness based on the listing of acts described in numbered paragraph one of these jury instructions. The issue regarding the jury instructions is "not frivolous" and "could very well be decided the other way." *House*, 1996-NMCA-052, ¶¶ 12, 14 (internal quotation marks and citations omitted).

**{33}** This issue is integral to the merits of Defendants' appeal. Assuming this substantial question is decided in Defendants' favor on appeal, then the jury instructions as to reckless child abuse present a reversible error that would result in an order for a new trial for each Defendant on both counts of reckless child abuse. *See State v. Cabezuela,* 2011-NMSC-041, ¶¶ 21-22, 36, 150 N.M. 654, 265 P.3d 705; *State v. Benally*, 2001-NMSC-033, ¶¶ 1, 12, 131 N.M. 258, 34 P.3d 1134. Thus, Defendants have satisfied the requirements for Section 31-11-1(C) under their jury instruction argument.

## III.    CONCLUSION

**{34}** As we have described, Defendants meet the requirements under Section 31-11-1(C) and are entitled to release pending the resolution of their appeal. Defendants' flight risk and dangerousness are not at issue, their appeal is not for the purpose of delay, and Defendants raise substantial questions in their challenges regarding the sufficiency of the evidence and the jury instruction. The Court of Appeals erred when it affirmed the district court's order denying Defendants' motion for release pending appeal. We reverse the Court of Appeals and remand this matter of release pending appeal to the district court for actions consistent with this opinion and this Court's prior order.

**{35}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**